IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| KEONI RICHARD JAENTSCH, #A1019833, | ) ) | NO. 1:18-cv-00073 HG-KSC |
|---|---|---|
| Plaintiff, | ) ) ) ) | ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND SECOND REQUEST TO |
| vs. | ) ) | PROCEED IN FORMA PAUPERIS |
| PATTIE-ANN K. PUHA, RAQUEL TAGUCHI, YUMI SUZUKI, | ) ) ) | |
| Defendants, | ) ) | |

**ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND SECOND REQUEST TO PROCEED IN FORMA PAUPERIS**

Before the Court is pro se Plaintiff Keoni Jaentsch's first amended complaint ("FAC") and second request to proceed in forma pauperis ("IFP"). ECF Nos. 8, 10. Jaentsch brings this action pursuant to 42 U.S.C. § 1983 against Defendants Pattie-Ann K. Puha, Raquel Taguchi, and Yumi Suzuki ("Defendants").[1] Jaentsch alleges that Defendants violated federal and state laws when Puha and Taguchi allegedly entered his

---

[1] Puha is a private party named in her individual capacity. Taguchi and Suzuki are Hawaii Department of Human Services ("DHS"), Child Welfare Services ("CWS") employees, and are named in their individual and official capacities.

1

home without his consent while he was incarcerated at the Oahu Community Correctional Center ("OCCC"), and Suzuki allegedly authorized Taguchi to do so.

For the following reasons, Jaentsch's claims against (1) Puha in Count I; (2) Puha and Taguchi under Hawaii's criminal statutes; (3) Taguchi and Suzuki in Counts II and III as alleged under the Fourteenth Amendment; and (4) Taguchi and Suzuki in their official capacities are DISMISSED.

Jaentsch's claims against Taguchi and Suzuki in their individual capacities in Counts II and III as alleged under the Fourth Amendment state a claim and may be served.

Jaentsch's second request to proceed IFP is DISMISSED as moot. Service of the FAC as limited below will be directed by separate order.

## I. BACKGROUND

### A. Procedural History

Jaentsch commenced this action on February 26, 2018, while he was incarcerated at OCCC. *See* ECF Nos. 1 (original Complaint); and 2 (IFP application).

On February 28, 2018, the Court granted Jaentsch's first request to proceed IFP. ECF No. 4.

On or about March 9, 2018, Jaentsch was released from custody.

On March 23, 2018, the Court issued an Order Dismissing Complaint in Part With Leave Granted to Amend. Order, ECF No. 5 ("March 23, 2018 Order").

On April 5, 2018, the March 23, 2018 Order was returned to the court by the U.S. Postal Service as undelivered, with a notation on the envelope that Jaentsch had been released from OCCC. ECF No. 6.

On April 30, 2018, Jaentsch filed a Notice of Change of Address. ECF No. 7.

On May 7, 2018, Jaentsch submitted a second request to proceed IFP. ECF No. 8.

On May 17, 2018, Jaentsch filed the FAC and a second Notice of Change of Address. ECF Nos. 9, 10.

**B. Claims in the FAC**

The FAC is nearly identical to the original Complaint. Jaentsch again alleges that Puha entered his home without his permission several times between

April 16 and 20, 2017, while he was detained at OCCC. FAC, ECF No. 10, PageID #89 (Count I). He says that Puha stole items from his property, and he now alleges that she gave Taguchi permission to enter his home on April 19, 2017. Jaentsch claims that Puha's actions violated his rights under the Fourth Amendment and Hawaii Revised Statutes ("HRS") §§ 708-810, 708-812, 708-813, and 708-814.[2]

Jaentsch next alleges that CWS Social Worker Taguchi entered his home without his permission on April 19, 2017, albeit allegedly with Puha's permission and CWS Supervisor Suzuki's authorization. *See* FAC, ECF No. 10, PageID #89 #90-91 (Counts II and III). He claims that Taguchi's entry and Suzuki's authorization for that entry into his home without his permission or a warrant violated his rights under the Fourth and Fourteenth Amendments and HRS §§ 708-811 & 708-814.

Jaentsch seeks compensatory and punitive damages

---

[2] Section 708-810 defines "Burglary in the first degree;" § 708-811 defines "Burglary in the second degree;" § 708-812 defines "Possession of burglar's tools;" and §§ 708-813 & 708-814 respectively define "Criminal trespass" in the first and second degrees.

4

and any injunctive relief to which he may be entitled.

## II. **SECOND REQUEST TO PROCEED IFP**

On February 28, 2018, the court granted Jaentsch's Application to Proceed in Forma Pauperis by a Prisoner. *See* Order, ECF No. 4. That IFP status has not been revoked.

On May 7, 2018, Jaentsch submitted an Application to Proceed in District Court Without Prepaying Fees or Costs, presumably because he thought that he was required to submit a non-prisoner IFP application when he was released from OCCC. *See* ECF No. 8. The District of Hawaii, however, does not generally require prisoners to resubmit an IFP application when they are released from custody. Because it is clear that Jaentsch remains indigent and his IFP status has not been revoked, his second IFP application, ECF No. 8, is DISMISSED as moot.

## III. **SCREENING STANDARDS**

Because Jaentsch is proceeding IFP, the Court must screen the FAC pursuant to 28 U.S.C. § 1915(e)(2). *See Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2002)

(per curiam) (holding that § 1915(e)(2)(B)'s screening requirements apply to non-prisoners proceeding or seeking to proceed IFP). The Court must dismiss a complaint or claim that is frivolous, malicious, fails to state a claim for relief, or seeks damages from defendants who are immune from suit. *See Lopez v. Smith*, 203 F.3d 1122, 1126 27 (9th Cir. 2000) (en banc).

Screening under § 1915(e)(2) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The "mere possibility of misconduct" or an "unadorned, the defendant-unlawfully-harmed me

accusation" falls short of meeting this plausibility standard. *Id.; see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). Leave to amend must be granted if it appears the plaintiff can correct the defects in the complaint. *Lopez*, 203 F.3d at 1130. If the complaint cannot be saved by amendment, dismissal without leave to amend is appropriate. *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## IV. DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Additionally, a plaintiff must allege that he

7

suffered a specific injury as a result of a particular defendant's conduct and an affirmative link between the injury and the violation of his rights. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

A. **Eleventh Amendment Immunity**

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Official capacity defendants are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law." *Oyama v. Univ. of Haw.*, 2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (further citations omitted).

The FAC alleges no ongoing constitutional violation or any colorable claim for prospective declaratory or injunctive relief. Official capacity claims against Taguchi and Suzuki are again DISMISSED with prejudice.

B. **HRS §§ 708-810, -811, -812, -813 & -814**

8

As explained in the March 23, 2018 Order, Jaentsch lacks the authority to bring criminal charges under HRS §§ 708-810, -811, -812, -813 & -814 against Defendants Puha and Taguchi for their alleged illegal entry into his home. *See Kapu v. Attorney Gen. Hawaii*, 2017 WL 4479252, at *5 (D. Haw. Oct. 6, 2017) (private individuals have no authority to issue a criminal indictment for any criminal statute); *Coryell v. Oakley*, 2018 WL 805663, at *2 (E.D. Cal. Feb. 9, 2018). Jaentsch may not pursue criminal charges against Puha and Taguchi by way of a federal civil rights action. His claims in Counts I, II, and as alleged under HRS §§ 708-810 to 708-814 are DISMISSED with prejudice.

**C. Fourteenth Amendment: Equal Protection**

Jaentsch alleges Taguchi and Suzuki violated his rights to equal protection under the law. The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend XIV, § 1. A plaintiff can state an equal protection claim by alleging that "defendants acted

with an intent or purpose to discriminate against" him based upon his membership in a protected class. *See Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) (citation omitted).

If a plaintiff is not part of a protected class, he can establish an equal protection "class of one" by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Jaentsch again fails to allege facts that show that he is part of a protected class or that Taguchi and Suzuki treated him differently than other similarly situated individuals with no rational basis for their actions. Jaentsch's Fourteenth Amendment equal protection claims against Taguchi and Suzuki in Counts II and III are again DISMISSED.[3]

**D. Fourth Amendment: Search and Seizure**

---

[3] The Court makes no determination whether these claims can be cured by amendment.

Jaentsch claims that Defendants violated the Fourth Amendment when they entered or authorized entry into his home without a warrant or permission. The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The unlawful "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980).

Under a Fourth Amendment analysis, a "search" occurs when the government physically occupies private property for the purpose of obtaining information. *See United States v. Jones*, 565 U.S. 400, 404 (2012) ("It is important to be clear about what occurred in this case: The Government physically occupied private property for the purpose of obtaining information."). A "seizure" of property occurs when "'there is some meaningful interference with an individual's possessory interest in that property.'" *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992) (quoting *United States v.*

*Jacobsen*, 466 U.S. 109, 113 (1984)). Accordingly, warrantless searches of a home by government officials, absent exigent circumstances or permission, are presumptively unreasonable. *Matalon v. Hynnes*, 806 F.3d 627, 633 (1st Cir. 2015).

### 1. **Defendants Taguchi and Suzuki**

When government officials enter a home without a warrant, court order, or consent, it is the State's burden to prove that some exception to the warrant requirement applies. *See United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). This applies equally to state child welfare officials as to law enforcement officials. *See, e.g.*, *Demaree v. Pederson*, 887 F.3d 870, 878 (9th Cir. 2018) (denying qualified immunity to social workers who removed children from a home without a court order, warrant, or reasonable cause to believe an emergency existed, based on clearly established Fourth and Fourteenth Amendment precedent); *see, e.g.*, *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 788, 790 (9th Cir. 2016) (*en banc*) ("Under the Fourth Amendment, government officials are ordinarily required to obtain

prior judicial authorization before removing a child from the custody of her parent.").

Jaentsch sets forth enough facts to state a colorable claim that Taguchi and Suzuki violated his rights under the Fourth Amendment when Taguchi entered his home without his permission on Suzuki's authorization. Jaentsch's Fourth Amendment claims in Counts II and III may be served on Taguchi and Suzuki in their individual capacities.

### 2. *Puha*

Because there are no allegations that Puha is a State employee, to maintain a Fourth Amendment claim against her under § 1983, Jaentsch must show that she was otherwise acting under color of state law when she allowed Taguchi to enter his property. *See Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011) (stating that the plaintiff bears the burden of establishing that a particular defendant is a state actor).

Federal courts recognize four tests to identify when a private party's action can be considered state

action: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus.  *See Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).  Jaentsch suggests that Puha acted jointly with Taguchi to violate his rights.

Under limited circumstances a private party may act under color of state law when "[she] is a willful participant in joint action with the State or its agents."  *Dennis v. Sparks*, 449 U.S. 24, 27 (1980); *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002).  To satisfy the joint action test, a plaintiff must plead that a private party's actions are "inextricably intertwined" with those of the government.  *Brunette v. Humane Soc'y of Ventura Cty.*, 294 F.3d 1205, 1211 (9th Cir. 2002) (holding that "substantial cooperation" must be shown between the private party and the state; joint action test may also be satisfied by a conspiracy between the state and a private party).

The joint action test "focuses on whether the state has 'so far insinuated itself into a position of interdependence with [the private actor] that it must

14

be recognized as a joint participant in the challenged activity.'" *Franklin*, 312 F.3d at 445 (quotation omitted). This requires "a substantial degree of cooperation before imposing civil liability for actions by private individuals that impinge on civil rights." *Id.* "[M]erely complaining to the police does not convert a private party into a state actor." *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008) (quotation omitted); *see also Peng v. Mei Chin Penghu*, 335 F.3d 970, 980 (9th Cir. 2003) (holding that a single request for police assistance is insufficient to show joint action).

Nothing within the FAC shows that Puha was acting in concert or conspiracy with the State when she entered his home. Jaentsch does not allege that Puha called DHS repeatedly requesting their assistance or intervention or suggest that Puha and Taguchi conspired to enter his property together without his permission. He provides no facts showing that Taguchi or Suzuki condoned, directed, or participated in Puha's "numerous" entries into his home or derived any benefit

15

from her alleged theft of his property. That is, the single alleged interaction between Puha and Taguchi on April 19, 2017, is insufficient to show that "the state . . . insinuated itself into a position of interdependence with [Puha]" or knowingly accepted any "benefits derived from [Puha's] unconstitutional behavior." *Florer*, 639 F.3d at 926.

The Court cannot infer that Puha acted jointly with the State to deny Jaentsch his constitutional rights on these facts. He therefore fails to show that she was acting under color of state law. Jaentsch's claims as alleged against Puha under the Fourth Amendment in Count I are DISMISSED.

## V. CONCLUSION

(1) Claims in Counts II and III of the FAC, as alleged under the Fourth Amendment against Defendants Raquel Taguchi and Yumi Suzuki in their individual capacities, state a plausible claim for relief and may be served.

(2) Claims against Taguchi and Suzuki in their official capacities are DISMISSED with prejudice.

16

(3) Claims against all Defendants under HRS §§ 708-810 to 708-814 are DISMISSED with prejudice.

(4) Claims against Taguchi and Suzuki under the Fourteenth Amendment, and all claims alleged against Defendant Puha in Count I are DISMISSED.

(5) The Application to Proceed in District Court Without Prepaying Fees or Costs is DISMISSED as moot.

(6) The Court will issue a separate service order with directions for serving the the FAC, Counts II and III, as limited by this Order, on Defendants Taguchi and Suzuki.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 1, 2018.

/s/ Helen Gillmor
Helen Gillmor
United States District Judge

Jaentsch v. Puha, No. 1:18-cv-00073 HG-KSC; ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND SECOND REQUEST TO PROCEED IN FORMA PAUPERIS; Scrn '18 (dsm FAC prt srv Taguchi Suzuki)